Case number 19-7017. Simon Bronner, derivatively, on behalf of nominal defendant, the American Studies Association, et al., appellant v. Lisa Duggan, et al. Mr. Marcus, for the appellants, and Mr. Grego, for the applicants. Let's let the courtroom clear. I beg your pardon? Let the courtroom clear. Yes, ma'am. May I begin? Just a second. That's no reflection on you, Mr. Marcus. Thank you, Your Honor. Point. May it please the Court, my name is Jerome Marcus. I represent the plaintiffs who are also the appellants in this matter. Your Honor, our position here is that the trial court made some very basic mistakes, failing to follow really black-letter rules. The red tab case makes it absolutely clear that the amount in controversy requirement, and it's an amount in controversy, it's not the amount you're ultimately entitled to. The amount in controversy requirement is to be assessed at the time a case begins. The trial court here actually assessed that amount. There was an amended complaint here, right? There was. And doesn't the Supreme Court in Rockwell tell us that we should look to the amended complaint? The amended complaint is the complaint that the substance of the complaints as far as the court's assessment of the jurisdictional amount did not change. Rockwell doesn't make that distinction. It says you look to the amended complaint to determine jurisdiction. Yes. You look at the amended complaint here. We have no difficulty with that. Our amended complaint is the complaint we're talking about. Right. My friends on the other side have called the court's attention to the fact that derivative counts were dismissed, but derivative counts were dismissed at the very beginning. And the trial court, its first assessment of the jurisdictional amount did not rely on the derivative counts in order to come to the conclusion that the jurisdictional amount had been satisfied. So the fact that they were not present in the second amended complaint doesn't change anything. That was the case the first time, and we're not – we weren't invoking it the first time. So if we look at only the second amended complaint, how do you get to $75,000? We get to $75,000 in all sorts of ways. We can get it – well, first of all, our position is that whether you can get to $75,000 is to be assessed on the basis of what we claim about what the law was. So one of the things that happened here – In the amended complaint. Okay. I understand. Let me get to the quickest answer to Your Honor's question. The defendants in this case have taken over $300,000 out of the kitty of this academic society and used it to fund their political activities. And that's a damage – who's damaged by that? Well, we've requested an injunction. Put aside the question of damages. Put aside the question whether we can actually get that $300,000 back. They show every intention, as far as our discovery shows, of continuing to do that. And we sought an injunction to stop them. An ASA is hurt by that. But how are the plaintiffs hurt by that? You have to show a direct issue. There's no dispute that the plaintiffs have the right to seek – there's no holding here, anywhere. And I don't think even the defendants are claiming that we don't have the right to seek an injunction to stop that if, in fact, it's wrong. We've made the claim that it's wrong. We've made the claim that it's a breach of the ASA's obligations. And we sought an injunction. Your friends on the other side point out, I think, at page 30 of their brief, that this was not an argument that you made below as far as amount in controversy. And you didn't respond to that in your reply brief. So why isn't this forfeited? We raised the issue of an injunction. What the trial court said was, you haven't shown me exactly how you get there. And that's true. We didn't. But we did say that we are seeking an injunction. We also said we were seeking punitive damages. We did not put in front of the court a detail of why – how we can prove that $300,000 is the amount taken or whatever. The amount is in excess of $75,000. Well, we're not supposed to scour the record. You are. No, no, no. You are. And there's no – You don't need to. If we've come into court and said we sought an injunction, it's worth $75,000. That's an option. That's the law. The law is if we come in and make a good-faith claim, we don't have to prove it at the outset. What's the good-faith claim? How do you get $75,000 of direct injury? You can't be raising before us injuries to the corporation here, right? With respect, Your Honor, the question of how the $75,000 – how the injunction is to be valued is its impact on the defendants. It's not how much money is going to go into my client's pocket. That is not the question. That sounds to me like a derivative claim. In this case, you can't be bringing claims about how the corporation is hurt. That's a derivative claim. You failed to make a demand letter. That claim is not here. Right, right, right, right. So as I understand it, you've got to be showing us how your plaintiffs were hurt to the tune of $75,000. With respect to the injunction, respectfully, Your Honor, I disagree. We've cited authority that says that the value – the way to assess the value of an injunction is what it's going to cost the defendants to comply. Your Honor is asking a separate question, which is are we entitled to seek an injunction? We say yes. I don't believe that – Why isn't that a derivative claim? That's what I'm missing. Nobody's made an argument that it's a derivative claim. I know you haven't characterized it that way, but why isn't it that? I'm saying, as I understand it, the $75,000 amount that you're claiming is an injury to the corporation. That's an injury to the corporation. I hear you, Your Honor. And why isn't that – Respectfully – That's not a derivative claim? Well, A, no, it's not a derivative claim. Why? Okay. I will answer the question, but I do insist on reminding Your Honor that that was not the basis for the decision of the court below, and I don't even believe it's an argument that they've made. I'm sure we'll hear how it somehow snuck its way in, but I don't believe it's here. Having said that, the D.C. law on nonprofits is not the same as corporation law in other states, and we've cited two very important cases, Daly and I believe Jackson, which hold that a member of a nonprofit has standing to do things that – Do either Daly or Jackson say you can recover damages to the institution in a direct suit? I believe that they say that we have the standing to challenge the conduct. Whether we can get the money back – and this is important. There's a distinction between whether you can get the money back, which is not what we're talking about here. I want to make that absolutely clear. We're not talking about getting the $300,000 back. The second question is can you get an injunction making them stop doing it going forward? And our position is those cases allow us to do that. I don't believe the defendants have mounted an argument that it's wrong. The trial court certainly did not hold that it was wrong. The question has not been briefed. And I'll just ask, how is that a direct injury to the plaintiffs? How is that a direct injury? How is that a direct injury to the plaintiffs? Because the D.C.'s nonprofit corporation code says that a member of a nonprofit corporation can do things. Your Honor is thinking like a corporate lawyer, which I understand. That's how I started thinking about this myself. Why is this any different from a shareholder of a company, a for-profit company in Delaware? But it's not the same. The D.C.'s law is different. The D.C. law is different, and that's a crucial point. Now, the question whether we can actually – we've never sought this, and I think it's an important point just to reference quickly. It's not as if we came into court and said, well, you spent $300,000. I'd like to recover that and put it – our clients put it in our clients' pocket. That's never been our effort. But putting aside the question whether there's any ability to recapture the $300,000 and focusing simply on the injunction, which is – its impact on the defendants, and I apologize when I stand back up, I'll have the cases, but we cited them in our brief. The way to evaluate an injunction for purposes of diversity of jurisdictions to ask, among other things, one of the B.C.'s is, what will it cost the defendants to comply? Without any regard to how much money is going to go into the plaintiff's pocket. They're two completely separate issues. And our position, I think it's very well founded. A, we have a basis for believing that. B, we don't have to go into detail. If we had to, we could, but we don't have to. Is there any record support for that valuation of $100,000? In the trial court record, oodles. Yes, there is. I mean, part of my difficulty is that. Where in the briefs do you identify that? It's not in the briefs. Well, that's a problem. Well, it would be a problem if the issue had been, you said you wanted an injunction, but you didn't specify, and so – and you have an obligation to specify. Our position is that at the outset of the case, and I think the law on this is clear, at the outset of the case, if the plaintiff comes in and says, I'm making a good-faith demand for a claim that's worth $75,000, at that point, and that's the point that matters, the trial court is not authorized to say, well, exactly what are the components of all of that? And that's what your honor is – What's your best authority for that proposition? Red cap. That's what red cap says. Red cap says the case – and it says it for a perfectly sensible reason, which is – Do you have another case if I don't read red cap the way you do? Well, help me understand how – if your honor doesn't mind, help me understand how else it could be read. Well, I ask the questions, not you. Okay. We have cases that have applied that injunction in the District of Columbia Circuit, and we've also cited both Seventh Circuit and Second Circuit authority for the proposition that you cannot create a regime in which the amount of contributions requirement is revisited for two very important reasons, one of which is directly relevant here. The first reason is that you're never going to get a correct answer all the time because sometimes defendants win in diversity cases. So you're never going to know to a certainty. But the second point, and this is what happened to us, is that after twice confirming that the court had jurisdiction, this amount had been satisfied, we were in our third year – fourth year, excuse me – of litigation. The trial court now decided to revisit the issue and change its mind, which is essentially what happened. Dismissed the case, sent us to the D.C. Superior Court, which held the statute of limitations had run on some of our claims, which puts us in a very awkward position. So one would have thought, I would have thought, I continue to think, that equitable tolling would have been sufficient to solve that problem, that equitable tolling is a matter of discretion for the court, and the court didn't exercise discretion that way. So we have the position of being in court, having the court twice tell us, no, you're in the right place, and then three and a half years later say, oh, no, I changed my mind, no, you're not, send us somewhere else, and then we're told that the statute has run. That can't be the one. All right, we'll give you some time to reply. Mr. Mugabero. Good morning, Your Honors. Good morning. May it please the Court, my name is Tom Mugabero. With my colleagues Richard Renner and Maria LaHood, I'm here on behalf of the appellees. The bottom line here is that the derivative claims, as the court knows, were not viable from the beginning of the case. The first complaint contained only vague allegations of individual damages, and as the court noted, you look to the amended complaint to determine jurisdiction. When the amended complaint was filed, there were no derivative claims, and there were no allegations of any damages suffered by the plaintiffs themselves. Would you answer your friend's argument to me that the D.C. law of nonprofit associations changes the way we ought to think about this, that I was thinking about this in the context of a corporate shareholder suit, and that that's not the right way to think about it? Certainly. Your Honor, I think the Daley and the Jackson case is recognized, that when you're a member of a nonprofit organization or a charitable organization, you do not get a financial dividend for your membership. You don't get a check. In fact, as we all know from being members of nonprofits, it's usually the other way around. You're giving checks and buying gala tickets and making donations. You don't get money back. I think what the Daley and the Jackson courts recognized is that there is a nonmonetary benefit to belonging to a nonprofit. So in the Daley case, the plaintiffs had lost their status as sorority sisters, as members of a longstanding sorority where alumni formed a community. In Jackson, the plaintiffs had lost their church. Those were damages. And the D.C. Court of Appeals recognized that you could look to those damages to determine whether or not there was a cause of action. And given that they had suffered those individual damages, those individual injuries, they had standing to challenge the organization's actions. I would also note that the jurisdictional threshold for Superior Court is $500. And if you don't meet that threshold, the remedy is not dismissal. It's simply you're referred down to small claims. So the question of how much those damages might be is for all intents and purposes irrelevant in the Superior Court. It's not irrelevant here. The amended complaint, the second amended complaint. So why isn't this fall under Daley and Jackson? Because, Your Honor, the second amended complaint did not list, did not enumerate any damages suffered by the individual plaintiffs. They were all to the institution? They were all to the institution. If you look at the claims for relief, if you look at the addendum, if you look at the allegations in the complaint, if you look at the appellant brief, they're claiming damages suffered by ASA, not by themselves. There is no allegation that any of the plaintiffs suffered any kind of community damage. They weren't excluded from symposia. They were not excluded from academic debate. They weren't kicked out of conferences. There's no allegation that they suffered any kind of injury in their own institutions. They didn't lose status as a professor. They weren't denied specific courses to teach. There's absolutely no allegation of that. Let's go back to Rockwell. Rockwell didn't involve an amount in controversy issue. If we were to apply it here, would we be extending the law in some way? Rockwell itself did not involve a jurisdictional threshold question. However, other cases that we have cited in the brief did involve that, and specifically the CUNY Law Group case. I want to know about Rockwell. Sure. Rockwell governs our court. If we were to apply Rockwell here, wouldn't that be an extension of the law? No, I don't believe so, Your Honor. I believe it would simply be another application of the law to the extent that Rockwell or other cases from this circuit have not yet looked at the amount in controversy element of jurisdiction. That's simply because those cases haven't been before the court. However, the Wright and Miller articles cited by the appellants make it clear, and cite to a host of cases and appointments, that where an element of damage is clearly not available from the beginning of the case, that the court can go back and revisit jurisdiction, especially where the plaintiffs are vague in their initial pleadings as to what damages they're seeking. It's the subsequent revelation, essentially. It becomes clear that from the beginning of the case, they can't get derivative damages, and they're not claiming individual damages. I would also note in the initial disclosure, which are mandatory, they didn't list any individual damages. How do you square Redcab with Rockwell? Redcab involved a case where the first, two points. First, Redcab was a removal case. And the plaintiff, the case got removed, and then the plaintiff sought to reduce the damages below the jurisdictional threshold. And the Redcab court said, in part at least, you can't do that. You can't play with the system. You can't deny the defendant its right to a federal tribunal by simply jimmying the amount you're looking for in the lawsuit. In addition, though, I think Redcab stands for the proposition that as long as it's clear from the beginning of the case that you could get damages above the jurisdictional threshold, then subsequent events that may limit that, dismissal of a claim on summary judgment, denial of an expert witness that knocks out a whole bunch of medical records, a whole bunch of medical bills, anything like that would not affect the jurisdiction of the court. Why isn't the filing of an amended complaint a subsequent event here? I think for two reasons. One, because it clarified what the damages that there was – it clarified what damages they were seeking. I'm starting to stammer. I apologize. It started to clarify what damages they were seeking and made it clear that they were not seeking individual damages, where there were a couple of references in the first amended complaint to reputational damage with absolutely no backup and no factual support for it. That was missing, by and large, from the second amended complaint. It was all damage to the institution. In addition, by that point, frankly, we had already challenged jurisdiction twice, and the plaintiffs knew that they had to deal with it somehow. The fact that it was not in the second amended complaint made it absolutely clear. They were not claiming anything on behalf of themselves. It was only the institution. Your friend has cited what I'd say is sort of a general fairness principle here, that for a number of years they were in the district court here thinking that the amount of controversy was adequate, and then the district court reverses itself from this, and they're left out of statute of limitations. What do you say to that? Well, I think two things. First of all, they should have known from the beginning that the derivative claims were not going to be viable. They only gave two days' notice. Nobody can confuse two with 90. And second of all, Your Honor, we had been challenged again. As I said, we've been challenging jurisdiction since the beginning. The point is on the amount of controversy. Right, right. And they knew, they should know, what kind of individual damages they might be able to claim and put up on the board. The fact that they waited for four years, I think— Well, they got a pass the first time from the district court. That didn't seem to be a problem. And then the district court came back and said, we're going to revisit it because I've got a question about volunteer immunity. At any point, they could have thought to themselves, we don't belong here and could have filed in the superior court. I think the reason they didn't is because we had already made noises about the anti-SLAPP suit, which unfortunately doesn't apply in the federal circuit. Before I run out of time, I want to address one thing, which is the injunctive relief. There is no allegation as to the cost of the injunctive relief. And in fact, we stated in our arguments, it would cost nothing to impose these injunctions. I'm running out of time, and I apologize. But the fact of the matter is, as the court pointed out, any injunctive relief for damages, for monies being spent, does inure to the association and not the individuals. And the D.C. Code on ultra-virus, which we have in the appendix, states that you can, if in a derivative action, the court may, the superior court may, it's 29-403-04C, the superior court may enjoin action and award damages in a derivative action. This is not a derivative action. Thank you. Thank you. Does Mr. Marcus have any time? All right. Why don't you take two minutes? I wanted to answer a couple of questions that your honors had. This is a holding from the court of appeals, the D.C. Court of Appeals, in the Daly case, one of the cases we refer. Members of a nonprofit organization whose revenue depends in large part upon the regular, recurring annual payments of dues by its members have standing to complain when allegedly the organization and its management do not expend those funds in accordance with the requirements of the Constitution and the bylaws of that organization. That's our claim. That's a large part of our case. So the idea that we should have known when we started this case. That's a broader statement than was necessary in the facts of Daly, though, right? I mean, your friend is correct, isn't he, in his characterization of the facts of Daly, the Daly-involved claim and Jackson claims that affected the status of the plaintiff. They affected the status of plaintiffs, but they affected the behavior of the organization. And the issue was not, those people did not go into court to get $4.33 in damages. They went into court to affect the conduct of the organization. Because they had been injured directly. They disagreed. They thought the organization was doing the wrong thing. They lost their church. They thought the church had been, I mean, there was a dispute within a church. It's a religious argument. It's not that somebody had taken their property. It wasn't property that they owned. They were members of an organization. The organization had been hijacked. That's exactly what we say. And they were complaining about how that organization was conducting itself. And the issue is, do they have standing to do that? Do we need to monetize that? Do we need to ask, how much money is going to come back into your pocket if you win? And the answer, resoundingly, is no. So it seems to me to say, well, you guys should have known four years before, when you filed this thing, that this wasn't going to mean what I think it pretty plainly means. Especially when we were told twice that we were in the right place. It just can't, that can't be right. It just cannot be right. With respect to the question of the value of the injunction, we did not put a dollar figure in our complaint. But when the court called us to the second time, when it again confirmed that it had jurisdiction, we did include in our brief a discussion of the value of injunctive and declaratory relief at issue in the SAC. And we pointed out our briefing on that issue. We discussed in detail the extent of ongoing financial injury to the ASA, including withdrawals from the ASA trust fund in excess of $100,000 per year to fund these activities. So the court had that information, the trial court had that information in front of it. The second time it confirmed that the amount in contrast to the requirement was satisfied. And our position is it just can't be that after all of that, we can be thrown out and then told the statute of limitations is wrong. All right. We have your argument. Thank you.
judges: Henderson, Griffith, Wilkins